## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GRIGGS ROAD, L.P., *et al.*,

      Plaintiffs,

    v.

SELECTIVE WAY INSURANCE
COMPANY OF AMERICA,

      Defendant.

No. 4:17-CV-00214

(Judge Brann)

## MEMORANDUM OPINION

### FEBRUARY 21, 2019

Plaintiffs Griggs Road, L.P. and Blaise Alexander ("Plaintiffs") and Defendant Selective Way Insurance Company of America ("Selective") filed cross-motions for summary judgment asking this Court to determine whether, under Plaintiffs' all-risk insurance policy, an ensuing loss clause restores coverage to Plaintiffs' claim despite a faulty workmanship exclusion. I conclude that it does, and accordingly, Plaintiffs' motion will be granted and Selective's motion will be denied.

# I.    BACKGROUND[1]

Facts giving rise to the current insurance coverage dispute occurred during construction of Plaintiff Blaise Alexander's home.    D'Alessio Inspired Architectural Designs (hereinafter, "stucco subcontractor") was hired to install stucco on the home's exterior walls and affix pre-cast concrete trim pieces to the home's soffits.

During installation, the stucco subcontractor committed certain errors that rendered the stucco installation worthless.  The stucco had to be removed and reapplied.  Similarly, pieces of pre-cast concrete trim had fallen from the soffits upon which they were affixed.  The pre-cast trim pieces also had to be reinstalled.

The stucco subcontractor's installation also damaged the home's walls and soffits.  The walls' special insulating properties were compromised and the soffits themselves had to be repaired.  Plaintiffs estimate that their remediation expenses totaled approximately $750,000.[2]

Plaintiffs, who were insured by Selective under a builders' risk insurance policy, submitted a claim seeking indemnification for their remediation expenses.

---

[1]    Unless otherwise noted, the facts are undisputed and set forth in Plaintiffs' Statement of Facts (ECF No. 34), Defendant's Response to Plaintiffs' Statement of Facts (ECF No. 45-1); Defendant's Statement of Facts (ECF No. 37), Plaintiffs' Response to Defendant's Statement of Facts (ECF No. 40).

[2]    Plaintiffs' Statement of Facts (ECF No. 34) at ¶ 32.  Defendants dispute this fact, but without further explanation.  *See* Defendant's Response to Plaintiffs' Statement of Facts (ECF No. 45-1) at ¶ 32.

Selective denied coverage based on the policy's exclusion for defective workmanship and faulty materials.

Plaintiffs filed a two-count complaint against Selective in the Court of Common Pleas of Lycoming County, Pennsylvania.[3] In Count I, Plaintiffs seek a declaration that their claim is covered by the policy. In Count II, Plaintiffs allege that, by failing to indemnify Plaintiffs, Selective breached the insurance contract. Selective removed the case to the United States District Court for the Middle District of Pennsylvania[4] and filed a counterclaim seeking to clarify its rights under the insurance policy.[5]

Currently pending before the Court are Plaintiffs and Selective's cross-motions for summary judgment.[6] Plaintiffs seek a declaration that their claim is covered, while Selective seeks a declaration that it is not. Plaintiffs also seek summary judgment as to liability on their breach of contract claim.

## II.    DISCUSSION

### A.    Standard of Review

Summary judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[3]    Complaint (ECF No. 1-1).

[4]    Notice of Removal (ECF No. 1).

[5]    Answer and Affirmative Defenses and Counterclaim (ECF No. 9).

[6]    Plaintiffs' Motion for Summary Judgement (ECF No. 33); Defendant's Motion for Summary Judgement (ECF No. 35).

matter of law."[7]  A dispute is "genuine if a reasonable trier-of-fact could find in favor of the non-movant," and "material if it could affect the outcome of the case."[8]  To defeat a motion for summary judgment, then, the nonmoving party must point to evidence in the record that would allow a jury to rule in that party's favor.[9]  When deciding whether to grant summary judgment, a court should draw all reasonable inferences in favor of the non-moving party.[10]  The same principles apply to cross-motions for summary judgment.[11]  The court considers each motion independently and is not obligated to grant summary judgment for either party.[12]

## B.   Whether Plaintiffs' Claim is Covered Under the Insurance Policy

Selective insured Plaintiffs under a builder's "all-risk" policy—a type of policy that covers all perils unless a specific peril is excluded.[13]  The policy

---

[7]   Federal Rule of Civil Procedure 56(a).

[8]   *Lichtenstein v. Univ. of Pittsburgh Medical Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 252 (1986)).

[9]   Federal Rule of Civil Procedure 56(c)(1); *Liberty Lobby*, 477 U.S. at 249.

[10]   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

[11]   *Peters Township School Dist. v. Hartford Accident and Indem. Co*., 833 F.2d 32, 34 (3d Cir. 1987).

[12]   *Rains v. Cascade Industries, Inc*. 402 F.2d 241, 245 (3d Cir. 1968).

[13]   Although the precise term "all-risk" does not appear in the policy, *see* Policy (ECF No. 37-2) at 35 (covering "direct physical loss or damage" to "buildings and structures while in the course of construction" so long as the loss or damage was not caused by an exclusion), both parties stipulate that the policy at issue constituted an all-risk policy.  *See* Plaintiffs' Brief in Support (ECF No. 38) at 14; Defendant's Brief in Opposition (ECF No. 45) at 3. *See also Plaza 61 v. North River Ins. Co.,* 446 F.Supp. 1168, 1170 (M.D.Pa. 1978) (citing *Miller v. Boston Ins. Co.*, 218 A.2d 275 (Pa. 1966) (explaining that "'[a]ll risk' policies of this type

broadly provides coverage for "direct physical loss or damage" to covered property unless a cause of loss is excluded.[14]  One such exclusion disclaims coverage for faulty workmanship.[15]  But within the faulty workmanship exclusion is an exception, one that courts commonly refer to as an "ensuing loss" provision.  The ensuing loss clause restores coverage as follows: "But if loss or damage by a Covered Cause of Loss results, we will pay for the loss or damage caused by the Covered Cause of Loss."[16]

Selective advances a narrow interpretation of the policy's ensuing loss clause.  Selective denied Plaintiffs coverage under the faulty workmanship exclusion, arguing that the exclusion bars coverage for damages to the Plaintiffs' walls and soffits because those damages were caused by the stucco subcontractor's improper stucco and pre-cast trim installation.[17]  According to Selective, Plaintiffs' losses are not ensuing because the "exception does not apply to losses caused by the excluded peril."[18]

---

extend coverage to every loss, not specifically excluded by the policy, except those caused by the willful act of the insured")).

[14]  Policy (ECF No. 37-2) at 35.

[15]  *See Id.* at 42-44 (stating that Selective "will not pay for loss or damage caused by or resulting from…[f]aulty, inadequate or defective… [d]esign, specifications, workmanship….").

[16]  *Id*. at 44.

[17]  Defendant's Brief in Support (ECF No. 36) at 13.

[18]  *Id*. at 14.

In contrast, Plaintiffs advance a broad interpretation of the ensuing loss clause. Plaintiffs argue that the faulty workmanship exclusion only excludes coverage for costs associated with correcting the stucco coating or reinstalling the pre-cast trim pieces. Plaintiffs state that because damage to the walls and soffits constitute a direct physical loss or damage—losses covered under the all-risk nature of the policy—the ensuing loss clause restores coverage even though those damages were caused by faulty workmanship.[19]

The Pennsylvania Supreme Court has not yet interpreted an ensuing loss clause in an all-risk policy.[20] But in predicting how the commonwealth's highest court might rule when confronting this issue, Pennsylvania's canons of insurance contract interpretation favor a broader interpretation of this policy's ensuing loss provision, and a correspondingly narrow interpretation of its faulty workmanship exclusion.[21]

---

[19] Plaintiffs' Brief in Support (ECF No. 38) at 12-14.

[20] When exercising diversity jurisdiction, the Court applies the substantive law of the forum state—here, Pennsylvania. *Kaplan v. Exxon Corp.*, 126 F.3d 221, 224 (3d Cir. 1997); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). The parties agree that Pennsylvania law applies. The parties further agree that the Pennsylvania Supreme Court has not issued any relevant decisions interpreting an ensuing loss clause in an all-risk policy. Plaintiffs' Brief in Support (ECF No. 38) at 14; Defendant's Brief in Support (ECF No. 36) 16 n.5. Nor could this Court locate any *sua sponte*.

[21] Because the Pennsylvania Supreme Court has not issued any relevant decisions interpreting an ensuing loss clause in an all-risk policy, I must predict how the Pennsylvania Supreme Court would rule if faced with the issue, apply Pennsylvania law as interpreted by the Pennsylvania Supreme Court, *Buczek v. Continental Cas. Ins. Co.*, 378 F.3d 284, 289 n.2 (3d Cir. 2004), and must also look to following:

Principles governing this Court's interpretation of the insurance policy are well-settled. Under Pennsylvania law, policy exclusions are narrowly construed in favor of coverage.[22]  In other words, exclusions are "strictly construed against the insurer and in favor of the insured"[23] while coverage clauses are construed broadly "so as to afford the greatest possible protection to the insured."[24]  And when the insurer denies coverage based on an exception or exclusion in a policy, the insurer bears the burden to establish its application.[25]  To determine whether the insurer has met its burden, the court turns to settled principles of insurance contract

---

decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that addressed the issue, as well as to analogous decisions, considered *dicta*, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.

*Alpizar-Fallas v. Favero*, 908 F.3d 910, 915 (3d Cir. 2018) (quoting *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216-17 (3d Cir. 2010)).

Under Pennsylvania law, a court rather than a jury typically interprets an insurance policy. *Madison Construction Co. v. Harleysville Mutual Ins. Co.,* 735 A.2d 100, 106 (Pa. 1999). *See also Regents of Mercersburg College v. Republic Franklin Ins. Co.,* 458 F.3d 159, 163 (3d Cir. 2006) ("The interpretation of the scope of coverage of an insurance contract is a question of law properly decided by the court.").

[22]  *Mutual Benefit Ins. Co. v. Politsopoulos*, 115 A.3d 844, 852 n.6 (Pa. 2015) (citing *Eichelberger v. Warner,* 434 A.2d 747, 750 (Pa. Super. 1981)).

[23]  *Swarner v. Mutual Ben. Group,* 72 A.3d 641, 644–45 (Pa. Super. 2013), *appeal denied,* 85 A.3d 484 (Pa. 2014) (citing *Kropa v. Gateway Ford,* 974 A.2d 502 (Pa. Super. 2009)).

[24]  *Eichelberger v. Warner*, 434 A.2d 747, 750 (Pa. Super. 1981); *Compagnie des Bauxites v. Ins. Co. of North America,* 724 F.2d 369, 373 (3d Cir. 1983) (explaining that all-risk policies should be interpreted broadly).

[25]  *Swarner,* 72 A.3d at 644–45 (citing *Donegal Mut. Ins. Co. v. Baumhammers,* 938 A.2d 286, 290 (Pa. 2007)).

interpretation.[26]   When interpreting an insurance policy, the goal is to "ascertain the intent of the parties as manifested by the language of the written instrument."[27] A court must read the policy as a whole and discern the policy's intent "from consideration of the entire instrument."[28]   If the language of the policy is clear, the court gives effect to the language's plain meaning; but if the terms are ambiguous, the terms are construed in favor of the insured "to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage."[29]   Contractual language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense."[30]

Here, the policy states in relevant part:

A. COVERAGE
We will pay for direct physical loss or damage to Covered Property from any of the Covered Causes of Loss.

---

[26] *Spece v. Erie Ins. Group*, 850 A.2d 679, 682 (Pa. Super. 2004).

[27] *Kane v. State Farm Fire and Casualty Co.*, 841 A.2d 1038, 1042 (Pa. Super. 2003); *see also Continental Casualty Co. v. Pro Machine*, 916 A.2d 1111, 1118 (Pa. Super. 2007) (describing interpretation as a question of law and explaining that "[t]he polestar of our inquiry is the language of the insurance policy."); *accord J.C. Penney Life Ins. Co. v. Pilosi,* 393 F.3d 356, 363 (3d Cir. 2004).

[28] *Riccio v. Am. Republic Ins. Co.*, 705 A.2d 422, 426 (Pa. 1997).

[29] *401 Fourth Street, Inc. v. Investors Ins. Group*, 583 Pa. 445, 454-55 (Pa. 2005); *see also Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 677 (3d Cir. 2016) ("Courts must interpret an insurance policy as one, harmonious document and resolve ambiguities in favor of coverage.").

[30] *Hutchison v. Sunbeam Coal Corp.,* 519 A.2d 385, 390 (Pa. 1986); *see also DiFabio v. Centaur Ins. Co.,* 531 A.2d 1141, 1143 (Pa. Super. 1987) (explaining that ambiguous terms are subject to "more than one interpretation when applied to a particular set of facts").

1. COVERED PROPERTY
    a. Buildings and structures while in the course of construction, erection or fabrication at the "job site", including foundations of such buildings or structures;

…

3. COVERED CAUSES OF LOSS
Covered Causes of Loss means direct physical loss or damage to Covered Property except those causes of loss or damage listed in SECTION B. EXCLUSIONS.

…

B. EXCLUSIONS.

…

    3. We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for the loss or damage caused by the Covered Cause of Loss.

…

        c. Faulty, inadequate or defective:

            …

            (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;[31]

Reading the faulty workmanship exclusion and the ensuing loss clause together renders the language "reasonably susceptible of different constructions and capable of being understood in more than one sense" when applied to the facts of this case.[32] On the one hand, the phrase "[b]ut if loss or damage by a [non-excluded direct physical loss or damage] results" could mean that the insurer pays for certain losses even though they resulted from the faulty workmanship. This

---

[31] Policy (ECF No. 37-2) at 35, 42, 44.

[32] *Hutchison,* 519 A.2d at 390; *Madison Constr. Co.,* 735 A.2d at 106.

meaning is derived as follows: to avoid rendering the faulty workmanship exclusion meaningless by reading the ensuing loss clause too broadly,[33] the ensuing loss clause must, then, narrow the application of the faulty workmanship exclusion, and the faulty workmanship exclusion only excludes losses intertwined with the faulty workmanship itself. In other words, ensuing losses would therefore be *all* losses, *except* those intertwined with faulty workmanship. Applying this reading here, the faulty workmanship exclusion would exclude coverage only for costs incurred to correct faulty workmanship, such as to reapply a new stucco-like finish to the exterior of the home or reaffix pieces of pre-cast trim to the soffits. Damage to the home's walls and soffits are therefore ensuing losses, or in other words, constituted covered causes of loss. This is the interpretation proffered by Plaintiffs as they concede that they are not seeing coverage for costs incurred "to replace stucco structure or precast concrete trim."[34]

On the other hand, the phrase "we will pay for the loss or damage caused by the [non-excluded direct physical loss or damage]" could mean that the insurer covers losses resulting from faulty workmanship only when a second non-excluded cause enters the picture to cause damage. This meaning is derived as follows: to

---

[33] *See Lesko v. Frankford Hospital-Bucks County*, 15 A.3d 337, 342 (Pa. 2011) ("[This Court] will not interpret one provision of a contract in a manner which results in another portion being annulled."); *Girard Trust Bank v. Life Ins. Co. of North America*, 364 A.2d 495, 498 (Pa. 1976) (explaining that terms within an insurance contract "will not be construed in such a manner so as to render them meaningless").

[34] Plaintiffs' Brief in Support (ECF No. 38) at 22.

avoid rendering the ensuing loss clause meaningless by reading the faulty workmanship exclusion too broadly, the ensuing loss clause must, then, only apply when a second non-excluded cause—one that would otherwise have been covered under the policy—causes the loss. In other words, the ensuing loss clause would restore coverage only to those losses attributable to a cause other than the faulty workmanship. Applying this reading here, unless a second non-excluded cause created Plaintiffs' loss, the faulty workmanship exclusion would broadly bar coverage for Plaintiffs' losses—both losses that are intertwined with the stucco subcontractor's faulty stucco and pre-cast trim installation (*i.e.,* losses incurred to reapply a new stucco-like finish and reinstall pre-cast trim), and losses resulting from the stucco subcontractor's poor work (*i.e.,* damage to the walls and soffits). This is the interpretation proffered by Selective; that the ensuing loss clause only restores coverage for "distinct and separate causes of loss."[35] Thus, because Selective and Plaintiffs' competing interpretations are objectively reasonable, they render the policy ambiguous.[36]

---

[35] Defendant's Brief in Opposition (ECF No. 45) at 9.

[36] To be clear, I do not conclude that the mere disagreement between Plaintiffs' and Selective renders the contract ambiguous. *See Viera v. Life Ins. Co. of N. Am.,* 642 F.3d 407, 419 (3d Cir. 2011) (interpreting Pennsylvania law and stating that "[d]isagreement between the parties over the proper interpretation of a contract does not necessarily mean that a contract is ambiguous. Where there is only one reasonable interpretation of a contract, that interpretation controls because "[s]traightforward language in an insurance policy should be given its natural meaning.")).

I find instead that ambiguity results because the policy is objectively susceptible to more than one reasonable interpretation. *See Armon v. Aetna Sur. & Casualty Co.,* 87 A.2d 302 (Pa.

Buttressing this finding of ambiguity is the fact that as the drafter of the policy, Selective could have adopted more precise language that would have supported its interpretation limiting coverage under the ensuing loss clause to "distinct and separate causes of loss."[37]  Under Pennsylvania law, "[a]n insurer's failure to utilize more distinct language which is available reinforces a conclusion of ambiguity."[38]  Indeed, more distinct language was not only available, it was used by Selective in another section of the policy.  In Section B.1., Selective excludes coverage for damage "caused directly or indirectly" by perils such as earth movement or flood.[39]  That exclusion further states that "such loss or damage is excluded regardless of any other cause or event that contributes concurrently or

---

1952) (explaining that competing interpretations must be reasonable before court may deem a provision ambiguous); *accord Consulting Eng'rs, Inc. v. Ins. Co. of North America,* 710 A.2d 82, 85 (Pa.Super.1998) ("Only where reasonably intelligent men, considering the word in the context of the entire policy, would honestly differ as to its meaning, will an ambiguity be found.").

[37] *See Vlastos v. Sumitomo Marine & Fire Ins. Co. (Europe) Ltd.,* 707 F.2d 775, 778 (3d Cir. 1983) (citing *Celley v. Mut. Benefit Health and Accident Ass'n,* 324 A.2d 430, 434 (Pa. Super. 1974) (explaining that when resolving ambiguity the court may consider "whether alternative or more precise language, if used, would have put the matter beyond reasonable question").

[38] *See McMillan v. State Mut. Life Assur. Co. of America*, 922 F.2d 1073, 1076-77 (3d Cir. 1990); *Prudential Property & Casualty Insurance Co. v. Sartno,* 903 A.2d 1170, 1177 (Pa. 2006) (citation omitted) ("being the one who selects the language in the contract, must be specific in its use; an exclusion from liability must be clear and exact in order to be given effect").

[39] Policy (ECF No. 37-2) at 42-43.

- 12 -

in any sequence to the loss or damage."[40]    That exclusion, then, more clearly excludes coverage whenever an excluded cause plays any role in the causation-chain-of-events leading up to a loss.

But Selective's omission of a such an exclusion in the ensuing loss clause at issue seems to amplify the ambiguity of the provision as to causation. Recall that the ensuing loss clause states: "[b]ut if loss or damage by a [non-excluded direct physical loss or damage] results, we will pay for the loss or damage caused by the [non-excluded direct physical loss or damage]."  In other words, if a loss results, ostensibly from an excluded cause, an insurer will pay for the loss caused by a non-excluded cause.  But what if concurrent causes comingle and create a loss? *May* the loss result from an excluded cause or *must* the loss result from a non-excluded cause?

Selective's decision to omit expansive exclusionary language limiting coverage for concurrent causes in the ensuing loss clause is particularly relevant given that the policy at issue is one which insures against all-risks.   Under Pennsylvania law, all-risks policies are construed broadly, and coverage claims succeed "unless the policy contains a specific provision expressly excluding the

[40]  *Id.*

loss from coverage."[41]  Had Selective couched the ensuing loss clause at issue here

with the expansive exclusionary language that it used in Section B.1., that language

would have curtailed Plaintiffs' reliance on the "'all-risk' nature of the policy and

[the] principle of construing ambiguities in favor of coverage."[42]  Again, Selective

did not use such language when it had the opportunity to do so.[43]

Moreover, Plaintiffs reasonably expected damage to the walls and soffits to

be covered, while reasonably expecting costs associated with correcting the stucco

and pre-cast trim to be excluded.[44]  The Pennsylvania Supreme Court has stated

that "regardless of the ambiguity, or lack thereof, inherent in a given set of

insurance documents ... the public has a right to expect that they will receive

something of comparable value in return for the premium paid."[45]  Courts

accordingly must examine the reasonable expectation of the insured when

interpreting an insurance policy.[46]  Here, Plaintiffs paid a $22,401 premium for the

---

[41] *Intermetal Mexicana, S.A. v. Insurance Co. of North America*, 866 F.2d 71, 76 (3d Cir. 1989) (citing *Compagnie des Bauxites v. Insurance Co. of N. Am.,* 724 F.2d 369, 371–72 (3d Cir. 1983)).

[42] *T.H.E. Ins. Co. v. Charles Boyer Childrens Trust*, 269 Fed.Appx. 220, 222 (3d Cir. 2008).

[43] *Accord Leep v. Trinity Universal Ins. Co.*, 261 F.Supp.3d 1071, 1084 (D. Mont. 2017) (rejecting insurer's construction of ensuing loss clause in part because insurer used specific exclusionary language elsewhere in the policy, but omitted such language in the exclusion at issue).

[44] Plaintiffs' Brief in Opposition (ECF No. 39) at 16, 21.

[45] *Collister v. Nationwide Life Insurance Co.*, 388 A.2d 1346, 1353 (Pa. 1978).

[46] *See Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 903 (3d Cir. 1997) (citing *Collister v. Nationwide Life Insurance Co.,* 388 A.2d 1346 (Pa. 1978); *Tonkovic v. State Farm Mutual Automobile Insurance Co.,* 521 A.2d 920 (Pa. 1987) (explaining Pennsylvania courts'

type of policy that covers all risks unless a risk is specifically excluded.[47]  When the insurance agent who sold Plaintiffs' the policy was e-mailed to discuss Plaintiffs' losses, the insurance agent replied, "My thinking is the policy excludes coverage for the faulty work that was performed, but if other parts of the home sustained damaged [sic] as a result of the faulty work and the other damage is not otherwise excluded – there could be some coverage for the resulting damage to non-faulty work if not otherwise excluded."[48]  Nowhere in its papers does Selective counter Plaintiffs' assertion that Plaintiffs' possessed a reasonable expectations of coverage.

To the extent Selective argues that the policy is either unambiguous or that this Court's disposition is otherwise bound by the Pennsylvania Superior Court's non-precedential decision in *Ridgewood Group, LLC v. Millers Capital Insurance Co.*,[49] *Ridgewood*'s limitations prevent me from giving it conclusive effect upon

---

adaptation of the doctrine of reasonable expectations); *Betz v. Erie Ins. Exchange,* 957 A.2d 1244, 1253 (Pa. Super. 2008).

[47]  Policy (ECF No. 37-2) at 54; Plaintiffs' Brief in Opposition (ECF No. 39) at 16.

[48]  Plaintiffs' Exhibit A (ECF No. 48-1).  *See also Beta Spawn, Inc. v. FFE Transportation Servs., Inc.*, 250 F.3d 218, 227 (3d Cir. 2001) (citing *In re Herr's Estate*, 161 A.2d 32, 34 (Pa. 1960)) ("Where a contract provision is ambiguous…extrinsic evidence may be properly admitted in an attempt to resolve the ambiguity.").

[49]  No. 1138 EDA 2016, 2017 WL 781620, at *1 (Pa. Super. 2017).

the case at bar.[50]   As a threshold matter, *Ridgewood*, as an unpublished memorandum decision, does not constitute binding authority upon this Court.[51] But more importantly, the *Ridgewood* court deviated from the axiomatic principle of Pennsylvania law that ambiguous language is construed against the insurer.

In *Ridgewood*, rain water traveled from the roof of the insured's property to a window well and ultimately ended up in in the basement.[52]   The policy covered water damage generally, but excluded damage arising from faulty maintenance.[53] The policy also contained an ensuing loss clause similar to that at issue here: "But, if an excluded cause of loss that is listed in Paragraphs a. through c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss."[54]   The Superior Court concluded that "the clause contains a facial ambiguity," reasoning as follows:[55]

> This exception, given its ordinary meaning, would swallow the
> exclusion whole and render it meaningless, pursuant to the following
> logic. All losses are covered except those explicitly excluded. Losses
> from negligent maintenance are explicitly excluded, except if the

---

[50]   *See Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000) (explaining that intermediate appellate court opinions are "not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise"); *West v. AT & T Co.*, 311 U.S. 223, 237 (1940) (explaining that federal court must give "due regard, but not conclusive effect," to decisions of lower courts).

[51]   *Ridgewood*, 2017 WL 781620, at *1 (citing 210 Pa. Code § 65.37).

[52]   *Id.*

[53]   *Id.*

[54]   *Id.* at *3.

[55]   *Id.*

negligent maintenance causes a loss that isn't otherwise excluded. Thus, the negligent maintenance exclusion would not act to exclude coverage for any loss that is not already excluded.[56]

Rather than construe the policy against the insured, the court considered the origins the ensuing loss clause, and after apparently considering decisions by other jurisdictions, the court found persuasive *TMW Enterprises, Inc. v. Federal Insurance Company*,[57] a decision authored by United States Court of Appeals for the Sixth Circuit.[58] In *TMW*, the Sixth Circuit concluded that ensuing loss clauses are "a causation-in-fact-breaking link in coverage exclusions, establishing that independent, non-foreseeable losses caused by faulty construction are covered."[59] Without further explanation, the Superior Court adopted the reasoning of the Sixth Circuit: "We believe that Sixth Circuit's interpretation of an ensuing loss clause is the correct one. Foreseeability is the lynchpin of the analysis."[60]

Although Selective argues that this Court should adopt the same principle here—that Plaintiffs' losses were foreseeable and thus excluded—the axiomatic principle that ambiguous insurance policies are construed against insurers tends "convincingly to show" that the Pennsylvania Supreme Court may not have

---

[56]  *Id*. at *4.

[57]  619 F.3d 574, 579 (6th Cir. 2010).

[58]  *Id.* at *4-5.

[59]  *Id.* at *4-5 (quoting *TMW Enterprises,* 619 F.3d at 579).

[60]  *Id.* at *5.

adopted *Ridgewood*'s approach.[61]   The Pennsylvania Supreme Court has stated

time and time again that because insurance contracts are contracts of adhesion, the

principle of *contra proferentem* requires ambiguities to be construed in favor of the

insured and against the insurer.[62]   While the *Ridgewood* court acknowledged that

the clause at issue contained "a facial ambiguity," it did not construe the policy

against the insurer.  Instead, it adopted another jurisdiction's reasoning without any

substantive analysis of insurance contract interpretation under Pennsylvania law.

The Pennsylvania Supreme Court has also stated that when "faced with the task of

construing  and  applying insurance contract  language,  caselaw  from  other

jurisdictions is generally inapposite, especially when there is Pennsylvania caselaw

directly on point."[63]   It would seem that caselaw setting forth Pennsylvania's

principles of insurance contract interpretation would be on point when interpreting

an  insurance  policy.   Accordingly,  because  this  Court  must  predict  how  the

Pennsylvania  Supreme  Court  would  adjudicate  this  matter,  and  *Ridgewood*

arguably contravenes uncontroverted principles of insurance contract interpretation

---

[61]   *Alpizar-Fallas v. Favero*, 908 F.3d 910, 915 (3d Cir. 2018) (quoting *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216-17 (3d Cir. 2010)).

[62]   *See, e.g., Prudential Property & Casualty Insurance Co. v. Sartno,* 903 A.2d 1170 (Pa. 2006); *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006); *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999); *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563, 566 (Pa.1983); *Collister v. Nationwide Life Ins. Co.,* 388 A.2d 1346, 1351 (Pa. 1978).

[63]   *Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. John*, 630 Pa. 1, 39 (Pa. 2014).

adopted by the Pennsylvania Supreme Court, Selective's reliance upon *Ridgewood* is not persuasive.[64]

In sum, Selective has not met its burden to establish that Plaintiffs' claim is excluded.[65] Selective, as the drafter of the policy, was in the best position to clarify potentially ambiguous terms and avoid coverage disputes.[66] But it did not, and because both Plaintiffs and Selective have offered competing reasonable interpretations of the policy, the tie breaks in favor of the Plaintiffs: "Regardless of which one is 'right' or 'wrong,' the fact is that because each interpretation is reasonable, the exclusionary term is ambiguous, and we must construe it in favor of the insured."[67] Pennsylvania courts apply this rule liberally, and I join that approach here.[68] Plaintiffs' interpretation controls.[69]

---

[64] For this reason, Selective's reliance on *Burgunder v. United Specialty Insurance Company,* No. 17-1295**,** 2018 WL 2184479, at *5 (W.D.Pa. May 11, 2018)—a case that approvingly cites to *Ridgewood*—is similarly unavailing.

[65] *Swarner v. Mutual Ben. Group,* 72 A.3d 641, 644–45 (Pa. Super. 2013), *appeal denied,* 85 A.3d 484 (Pa. 2014) (citing *Donegal Mut. Ins. Co. v. Baumhammers,* 938 A.2d 286, 290 (Pa. 2007)).

[66] *cf. New Castle County, DE v. National Union Fire Ins. Co. of Pittsburgh, PA*, 243 F.3d 744, 756 (3d Cir. 2001) ("…insurance policies are contracts of adhesion. Therefore it is the responsibility of the *insurer* to write clear policies with adequately defined terms…Because of the one-sided nature of insurance policies, insurance companies are in the best position to clarify potentially ambiguous terms and avoid future disputes.").

[67] *Sartno,* 903 A.2d at 1177.

[68] *See McMillan v. State Mut. Life Assur. Co. of America*, 922 F.2d 1073, 1075 n.1 (3d Cir. 1990) (collecting cases where courts interpreting Pennsylvania law have construed ambiguous insurance policies in favor of coverage); *Lomma v. Ohio National Life Assurance Corporation*, 329 F.Supp.3d 78, 87 (M.D.Pa. 2018) (same).

[69] *See American Auto. Ins. Co. v. Murray,* 658 F.3d 311, 321 (3d Cir. 2011) (citation and internal quotation marks omitted) ("ambiguous provisions in an insurance policy must be

As neither party points to any disputed issues of material fact that would preclude this Court from entering summary judgment, this Court, construing the policy in Plaintiffs' favor because it is ambiguous, concludes that the ensuing loss clause restores coverage for losses except those associated with correcting the stucco coating or reapplying the pre-cast trim. Accordingly, summary judgment is granted in favor of Plaintiffs on Count I.[70]

### C. Whether Selective Breached the Insurance Policy

Plaintiffs argue that Selective breached the policy by refusing to cover their claim.[71] Because this Court concludes that Plaintiffs' claim is covered under the policy, and because Selective proffers no argument contesting their liability under Plaintiffs' breach of contract claim, summary judgment is granted in favor of Plaintiffs on Count II as to liability.[72] As for damages, because a genuine dispute

---

construed against the insurer and in favor of the insured; any reasonable interpretation offered by the insured, therefore, must control.").

[70] *See Lomma*, 329 F.Supp.3d at 94-95 (granting summary judgment in favor of plaintiffs after finding insurance contract was unambiguous, and that no extrinsic evidence was available to clarify the contractual intent of the parties).

[71] Plaintiffs' Brief in Support (ECF No. 38) at 25-26.

[72] *See Lomma*, 329 F.Supp.3d at 94-95 (granting summary judgment in favor of plaintiffs after finding insurance contract was unambiguous, and that no extrinsic evidence was available to clarify the contractual intent of the parties).

of material fact exists as to the amount of Plaintiffs' expenses, that question must

be resolved by a jury.[73]

## III.    CONCLUSION

For the reasons discussed above, Plaintiffs' motion for summary judgment

will be granted, and Selective's motion for summary judgment will be denied.  An

appropriate Order follows.


BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[73]  Plaintiffs' Statement of Facts (ECF No. 34) at ¶ 32; Defendant's Response to Plaintiffs'
Statement of Facts (ECF No. 45-1) at ¶ 32.